JOHNNY BRISCOE,         )
                               )
        Plaintiff,         )
                               )
        vs.                 )        No. 4:08-CV-1717 (CEJ)
                               )
ST. LOUIS COUNTY, et al.,      )
                               )
        Defendants.     )

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of defendants Lane Hollandsworth, Stephen Deen, Sr., and Jack Webb for summary judgment, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The motion is directed to plaintiff's amended complaint filed on August 6, 2009. Also before the Court is the motion of plaintiff Johnny Briscoe for leave to file a third amended complaint.[1] Responses have been filed, and the issues are fully briefed.

### I.   Background

In the early morning hours of October 21, 1982, a man entered R.T.'s apartment, raped her at knifepoint, and stole her credit cards and jewelry. R.T. reported that she was able to see the man because her bedroom was illuminated by a table lamp and parking lot lights. R.T. told the police that the man remained in her apartment for between forty-five minutes and one hour. During that time, he smoked cigarettes, conversed with R.T., and told her that his name was "Johnny Briscoe."

After St. Louis County police officers arrived at the apartment, the assailant telephoned R.T. three times and again identified himself as "Johnny Briscoe." During the conversations, asked the victim if she would date him and tried to arrange a time

---

[1] Plaintiff sought leave to file a second amended complaint, but withdrew that request.

to meet with her to return her property.  With prompting from the officers,  R.T. was able to get a phone number from the assailant.   Later, after finding the pay phone to which the number was assigned, officers conducted surveillance in the hope that the assailant would return.  In addition, for a period of time after the crimes, police officers were stationed at R.T.'s apartment for her protection.

R.T. told the police that she saw the assailant's face clearly and that she would be able to identify him if she saw him again.  She  gave the police a description of the assailant, and a composite drawing was created.  The police seized various items from the crime scene, including three cigarette butts that were believed to have been smoked by the assailant.

Approximately eight hours after the crimes occurred, R.T. viewed a photo array assembled by defendant Hollandsworth that included photographs of plaintiff and four other men.  R.T. selected plaintiff's photograph as that of the man who had raped her.

On October 26, 1982, plaintiff was arrested.

On October 27, 1982, R.T. viewed a live lineup at the St. Louis Police Department.  Defendant Deen was present.  The live lineup was comprised of plaintiff and three other men.  The lineup participants were required to speak words that R.T. reported the assailant had used.   R.T.  identified plaintiff as the man who had raped and robbed her.

On December 20, 1982, plaintiff filed a motion to suppress the out-of-court photo array and live lineup as unduly suggestive.   After a hearing, the motion was denied.  Plaintiff's  trial began on May 2, 1983.  In court, R.T. identified plaintiff as her rapist.  The jury found plaintiff guilty of forcible rape, sodomy, robbery second degree, burglary first degree, stealing, and armed criminal action.   He was later sentenced to an aggregate term of imprisonment of 45 years.  His conviction for stealing was

reversed on appeal, but the judgment was affirmed in all other respects.  State v. Briscoe, 672 S.W.2d 370 (Mo. Ct. App. 1984).

At the request of the prosecuting attorney in 2000, a search was conducted by police department personnel for evidence relating to plaintiff's case.  It was then reported that all of the evidence had been destroyed.  In 2001, the prosecuting attorney directed that a second search be conducted, this time specifically for the cigarette butts found at the crime scene.  This search was prompted by plaintiff's post-conviction motion for forensic DNA testing.  In an affidavit dated March 19, 2002, Webb, who was then in charge of the crime lab, stated that the cigarette butts could not be found.  After the second search yielded no results, plaintiff's motion was denied as moot.

On November 17, 2005, during another search for evidence,  the three cigarette butts were found "in a dry storage that . . . had been in one of the [crime lab] freezers."  (Doc. #113-3, ¶ 250).  Through analysis it was determined that plaintiff was not a DNA contributor on the cigarette butts.  In July 2006, the St. Louis County Circuit Court set aside plaintiff's convictions and ordered him released from custody.

* * * * *

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, asserting that defendants Hollandsworth and Deen violated his constitutional right to due process by employing suggestive identification procedures, by failing to conduct an adequate investigation and by withholding exculpatory evidence (Count I).  Plaintiff claims that defendant Webb violated his constitutional rights by failing to preserve evidence and thwarting plaintiff's right to post-conviction DNA testing (Count II).   The claims are asserted against the defendants in their individual and official capacities.

### III.   Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts.  AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987).  The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c).  Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  Fed.R.Civ.P. 56(e).  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986).

Under 42 U.S.C. § 1983,  a plaintiff may recover damages when a defendant, acting under color of state law, deprives the plaintiff of rights guaranteed by the Constitution or laws of the United States.  "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  Madewell v. Roberts, 909 F.2d 1203, 1208 (8th Cir. 1990).  It is not enough to prove that the plaintiff's rights were violated.  To prevail in a § 1983 action, the plaintiff must also prove that the

defendant was directly involved in the conduct that deprived plaintiff of his rights. A defendant in a § 1983 action cannot be held liable for constitutional violations under the theory of *respondeat superior.* Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001).

IV. **Discussion**

A. **Official Capacity Claims**

At all times relevant to this lawsuit, the defendants were employees of the St. Louis County Police Department. The claims in the amended complaint are based on the defendants' alleged actions in connection with the investigation of the crimes for which plaintiff was convicted.

It is well-settled that "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer." Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). "[M]unicipal defendants, cities and counties may only be liable under section 1983 if an official 'policy' or 'custom' caused a violation of the plaintiff's constitutional rights." Tyler v. Jackson, No. 4:10CV3087, 2010 WL 2560467 (D. Neb. June 23, 2010) (citing Doe By & Through Doe v. Washington County, 150 F.3d 920, 922 (8th Cir. 1998 ) (citing Monell Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978))). "Before a municipality [city, or county] can be held liable, however, there must be an unconstitutional act by [its] employee[s]." Russell v. Hennepin County, 420 F.3d 841, 846 (8th Cir. 2005) (citing Avalos v City of Glennwood, 382 F.3d 792, 802 (8th Cir. 2004)).

Here, the claims asserted against the defendants in their official capacity are essentially claims against St. Louis County. On February 22, 2010, this action was dismissed against St. Louis County for failure to state a claim. See Fed. R. Civ. P.

12(b)(6). The Court specifically found that the first amended complaint did not contain sufficient facts that would support the existence of an unconstitutional policy. Because St. Louis County is no longer a defendant in this action, the defendants here are entitled to summary judgment on all of the claims brought against them in their official capacity.

## B. Identification Procedures

Defendants Hollandsworth and Deen argue that plaintiff's claim that are barred by issue preclusion because the suggestiveness of the out-of-court identification procedures was litigated and decided against plaintiff during the state-court criminal proceedings. Plaintiff argues that his vacated conviction nullifies the preclusive effect of the state court's decision on the issue.

"When a federal constitutional issue is previously decided in a state criminal proceeding following a full and fair hearing, issue preclusion will therefore bar relitigation of that issue in a § 1983 action." Simmons v. O'Brien, 77 F.3d 1093, 1096 (8th Cir. 1996). The Court will apply "the Missouri law of issue preclusion [to] determin[e] the preclusive effect given to the state trial court's decision to admit the [photo array and live lineup] into evidence." Simmons, 77 F.3d at 1096.

In Missouri, "[t]here are four elements to a collateral estoppel claim: (1) the issue decided in the first action must be identical to the issue in the second action; (2) the prior litigation must have resulted in a final judgment on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication; and (4) the party must have had a full and fair opportunity to litigate the issue in the prior suit." Fischer ex rel. Scarborough v. Fischer, 34 S.W.3d 263 (Mo. Ct. App. 2000) (citing Shahan v. Shahan, 988 S.W.2d 529, 532-33 (Mo. banc 1999)). Missouri law also provides that:

> It is a principle well settled and of general application that where a question proper for judicial determination is directly put in issue, and finally determined in a legal proceeding by a court having competent authority and jurisdiction to hear and determine the question, such decision and determination will be deemed final and conclusive upon the parties and their privies, in all further litigation between them, in which the same question arises, so long as the judgment remains unreversed or is not otherwise set aside.

Patrick V. Koepke Constr., Inc. v.  Woodsage Constr. Co., 119 S.W.3d 551, 557 (Mo. Ct. App. 2003) (citing Hall v. Wilder Mfg. Co., 293 S.W. 760, 766 (Mo. 1927); Century Fire Sprinklers v. CNA/Transport. Ins. Co., 87 S.W.3d 408, 424 (Mo. App. Ct. 2002) (emphasis in original).

 Just as he does in this action, plaintiff raised the issue of the constitutionality of the out-of-court identification procedures in the state court criminal proceedings. After a hearing, plaintiff's challenges were rejected by the state court.    It cannot be disputed that plaintiff had a full and fair opportunity to litigate the constitutionality of the identification procedures in the state-court proceedings.   However, the Court finds that the original judgment of conviction does not constitute as a final judgment on the merits because it was later vacated.  As such, the second element of collateral estoppel is not satisfied.  Because all of the four elements are not met, collateral estoppel does not apply.

A two-part test is used to determine whether identification procedures violate a plaintiff's constitutional rights.  Unite States v. Murdock, 928 F.2d 293, 297 (8th Cir. 1991).  First, the court must determine if the challenged identification procedure was impermissibly suggestive.  Id.  Second, the court "must determine whether, under the totality of the circumstances, the suggestive procedures created 'a very substantial likelihood of irreparable misidentification."  Id. (citing Manson v. Brathwaite, 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)).   "In making the second

determination, reviewing courts must consider: 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.'" <u>Murdock</u>, 928 F.2d at 297 (citations omitted).

As discussed below, many of the statements and actions plaintiff complains of are attributed generally to the police officers involved in the investigation---not specifically to the defendants. If plaintiff were seeking to suppress the identification evidence, then it would be sufficient for him to cite the conduct of the police officers generally. Here, however, plaintiff is seeking redress under § 1983, which requires him to prove that the defendants were directly responsible for the statements or actions that made the identification procedures impermissibly suggestive.

### 1. Photo Array

The photo array was assembled and presented to the victim by defendant Hollandsworth. There is no evidence that defendant Deen participated in the selection of the photographs or in displaying them to R.T. Absent evidence of his direct involvement, Deen is entitled to summary judgment on the claim that the photo array violated due process.

In her report to the police, R.T. described her attacker as follows: (1) a black man between 25 and 30 years old; (2) five feet, eight inches tall and 130 pounds with a thin build; (3) dark complexion; (4) brown eyes; (5) mustache; (6) a two-inch, black Afro hairstyle; and (7) normal teeth. The array consisted of front and profile views of the faces of five men, including plaintiff. They appeared to be within the age range of 25 to 30 years. All wore Afro hairstyles and had mustaches, but some (including plaintiff) also had goatees. The photographs did not depict height, weight or body

build.  The men's teeth could not be seen.  All of the men were African-American, although there was some variation in their skin tones.  There were no significant differences between plaintiff's appearance and that of the other men that made plaintiff obviously distinguishable.  See, United States v. Lewis, 547 F.2d 1030, 1035 (8th Cir. 1976), cert. denied, 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977) ( lineup was not impermissibly suggestive even though defendant was four inches shorter, had a lighter complexion and a more receding hairline than the other men). Additionally, the physical characteristics that could be seen in the photographs were not strikingly  dissimilar to those of the of the man described by R.T.   Plaintiff makes much of the fact that he was taller and heavier than the man described by R.T. and that he had a gold front tooth as opposed to "normal" teeth.  Clearly, these differences are immaterial, because height, weight, body build and teeth could not be seen in the photograph.

Before viewing the photos, R.T. was not told that her attacker would not be in the array.  However, in her deposition, R.T. testified she expected that "Johnny Briscoe" would be in the photo lineup.  Doc. 88-6, p, 33. However, that expectation was based on the fact that this was the name her attacker gave her and it was the name that she relayed to the police----not because of anything Hollandsworth said. R.T. also testified that the only warning she was given was "that I must be sure that it is, you know, the man who raped me, because, you know, it could be anybody." Doc. 88-6, p. 37.   R.T. further testified that the names on the photographs were covered and she was not able to see them before she made her identification.  There is no evidence that Hollandsworth engaged in any conduct that influenced R.T.'s

selection of plaintiff's photograph.[2]

R.T. testified that she learned that she had identified plaintiff after she selected his photograph from the array. According to R.T., "*they*" told her that the person she identified was Johnny Briscoe and "*they*" removed the piece of paper that was covering his name on the photograph. Doc. 88-6, pp. 38, 39. These actions are not attributed to Hollandsworth specifically, although it is undisputed that he was present during the photo array, along with other police officers. Even if the Court were to find that Hollandsworth's statements or actions rendered the photo array unduly suggestive, there remains the question of whether, under the totality of the circumstances, the suggestive procedure created a substantial likelihood of misidentification.

Here, the undisputed facts are that the assailant remained in R.T.'s apartment for forty-five minutes to an hour. R.T.'s bedroom was illuminated by a table lamp and the parking lot lights, and she testified that she could see the man's face clearly. Except for when he went to the bathroom to clean himself, the man remained in the bedroom with R.T. R.T. and the attacker smoked cigarettes together and engaged in conversation. Although R.T. was frightened by the man's threats to kill her, she testified that she had to "remember what he looked like because I thought I would have to know." Doc. 88-4, p. 18. The evidence thus establishes that the victim had significant opportunity and ability to view her assailant, and that she was focused on his appearance. The evidence also establishes that the time between the crime and the photo array was relatively short (approximately 8 hours), and that R.T. "had a high level of certainty" in her selection of plaintiff's photograph. Johnson v. Rollins, 2006 WL2546807, *7 (E.D. Mo. 2006). See also United States v. Rose, 362 F.3d1059,

---

[2]R.T. testified that, before the photo array, she was told that Johnny Briscoe was "a real mean guy, and that he'd been in prison for 10 years." She was unable to attribute this statement to Hollandsworth. Doc. 88-6, p. 44.

1066 (8th Cir.2004); United States v. Brodnicki, 75 F.3d 1261, 1265-66 (8th Cir. 1996). Indeed, R.T. testified that she when she saw plaintiff's photo, she "knew it was him right away" and she had "no doubt" about her identification. See Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993) (the certainty of an eyewitness's identification strengthens the reliability of such identification).

Given the totality of circumstances, the evidence fails to establish that the photo array created a substantial likelihood of irreparable misidentification. The Court concludes that Hollandsworth's actions in connection with the photo array did not violate plaintiff's right to due process.

### 2. Live Lineup

It is undisputed that Hollandsworth did not participate in formulating the live lineup and was not present when it was conducted. Therefore, he cannot be held liable for any constitutional violation that occurred in connection with the lineup.

The parties do not agree on the extent to which defendant Deen was involved in the live lineup, but there is no dispute that he was present. R.T. testified that she was told before the lineup that plaintiff had been arrested and that he was in jail. She also testified that she was told that the lineup would be delayed because "he" was eating; R.T. assumed that "he" was Johnny Briscoe. Even if these statements were considered impermissibly suggestive, there is no evidence that they were made by Deen. Deen's liability cannot be based on the actions of other police officers.

All of the lineup participants were black men of similar age and build, although plaintiff was slightly taller than the others. Two of the men wore hats. These differences are not so significant as to make the lineup impermissibly suggestive. "Police stations are not theatrical casting offices; a reasonable effort to harmonize the lineup is normally all that is required" to satisfy due process. United States v. Lewis,

547 F.2d at 1035.  Plaintiff was the only participant whose picture had been shown in the photo array.  As discussed above, Deen had no involvement in the photo array.  Further, R.T. testified that no one told her that the man she identified in the photo array would be in the lineup.  Plaintiff was also the only participant wearing pants over a jumpsuit, and there is evidence that R.T. knew that Johnny Briscoe had been arrested.  However, R.T. did not recognize the jumpsuit as jail clothing and she did not base her identification on the plaintiff's clothing.

Even if the plaintiff could establish that Deen was directly involved in a  lineup that was impermissibly suggestive, there is no evidence that the suggestive procedure created a substantial likelihood of irreparable misidentification.  As discussed above, the victim had a prolonged opportunity to view her assailant and she remained focused on his appearance throughout the encounter.  The victim viewed the lineup less than one week after the crimes occurred.  At the lineup, R.T. did not equivocate in her identification of plaintiff.   Instead, she was able to identify him as her assailant "right away."  Doc. 88-4, p. 46.   When asked why she identified plaintiff as the man who had raped her, R.T. testified,

> Because he looked exactly, you know, I mean, not looked like, but he was the man that raped me.  I don't want to say looked like, or, you know, it was his twin brother, that is firmly the man that I thought that raped me, in full belief.

Doc. 88-6, p. 85.

Given the totality of circumstances, the evidence fails to establish that the live lineup created a substantial likelihood of irreparable misidentification.  There is no evidence that Deen's involvement with the lineup violated plaintiff's right to due process.

### C.  Investigation

The Eighth Circuit "recognized a substantive due process cause of action for

reckless investigation in <u>Wilson v. Lawrence County, Mo.</u>, 260 F.3d 946 (8th Cir. 2001), where [the appellate court] identified the liberty interest at stake as the 'interest in obtaining fair criminal proceedings.'" <u>Amrine v. Brooks</u>, 522 F.3d 823, 833 (8th Cir. 2008) (citing <u>Wilson</u>, 260 F.3d at 956 n.8; <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).  To establish a violation of due process based on failure to investigate, the plaintiff must demonstrate that the "state officers' actions  . . . shock the conscience."  <u>Amrine</u>, 522 F.3d at 833 (citing <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)).  "Conduct intended to injure will generally rise to the conscious-shocking level, but negligent conduct falls 'beneath the threshold of constitutional due process.'" <u>Akins v. Epperly</u>, 588 F.3d 1178, 1183 (8th Cir. 2009) (citing <u>Lewis</u>, 523 U.S. at 849, 118 S.Ct. 1708).         In <u>Clemmons v. Armontrout</u>, 477 F.3d 962 (8th Cir. 2007), the plaintiff was convicted and ultimately acquitted of the murder of his fellow inmate. After his acquittal, the plaintiff filed a § 1983 claim against the defendants, alleging that they had violated his due process rights by intentionally or recklessly failing to investigate the crimes for which the plaintiff was charged.  The Eighth Circuit found that the plaintiff failed to present evidence that the defendants "acted intentionally, recklessly, or in bad faith" by failing to investigating a lead that another prisoner killed the victim.  <u>Id.</u> at 966.  The appellate court noted that the plaintiff claimed the defendants failed to interview several individuals, but concluded that the plaintiff "offered no explanation for why these actions constitute recklessness as opposed to mere negligence."  <u>Id.</u>  The Eighth Circuit held that the undisputed facts established that the defendants' actions were not intentional or reckless.  <u>Id.</u>

In <u>Akins</u>, during an altercation with three deputy sheriffs near plaintiff's vehicle, the plaintiff struck one of the officers with the vehicle.  588 F.3d at 1181.  Two patrol

officers were assigned to investigate the incident.  Id.  The plaintiff was "charged that day with first degree assault of a law enforcement officer."  Id.  Thereafter, a jury acquitted the plaintiff of all charges.  Id. at 1182.  The plaintiff then brought a § 1983 action, alleging that the investigators had violated in his substantive due process rights by failing to conduct an adequate investigation.  Id.  After their claim of qualified immunity was rejected by the district court, the investigators appealed.   The court of appeals found that, "[a]t most, [the defendants] failed to investigate other leads and to explore the inconsistencies in the evidence."  Id.  As such, the court held that the defendants "were guilty of [nothing] more than mere negligence, which is insufficient to establish a claim of conscious-shocking conduct."  Id.

Here, plaintiff claims that the investigation was inadequate in several respects. He points to Hollandsworth's failure to order blood tests, to search plaintiff's home for the stolen credit cards and jewelry, to investigate plaintiff's alibi, and to interview hotel employees and patrons who may have seen the assailant. (Doc. #103, at 12, 15-16, 19). Plaintiff also criticizes Hollandsworth for failing to investigate Larry Smith as a suspect, even though Smith "matched" R.T.'s description of the rapist and Smith was arrested in December 1982 after banging on R.T.'s door.    Plaintiff asserts that Hollandsworth purposefully refused to explore leads and other suspects to "protect[] his interest in a personal relationship with R.T."   (Doc. #103, at 21).

The Court finds that plaintiff  has not presented sufficient evidence to establish that a genuine issue of material fact exists as to whether Hollandsworth's actions or inactions constitute conscious-shocking conduct.  This is not a case in which the police failed to conduct an investigation designed to apprehend R.T.'s attacker.  Rather, the evidence shows that they interviewed the victim, collected and analyzed physical evidence from the crime scene, conducted surveillance, obtained a composite drawing

- 14 -

of the assailant, and compiled a photo array and live lineup.  It is undisputed that Hollandsworth did not pursue a blood test, did not search for the stolen items and did not investigate Larry Smith as a suspect. However, there is no evidence that Hollandsworth's investigative decisions were influenced or motivated either by a desire to maintain a personal relationship with R.T. or by any other improper reason. Hollandsworth's failure to investigate other leads and Larry Smith as suspect may constitute negligence, at best, but not recklessness.  Furthermore, there is no evidence to suggest that Hollandsworth attempted to coerce or threatened plaintiff, purposefully ignored evidence suggesting plaintiff's innocence, or was pressured to implicate plaintiff in the crimes.  As such, the Court finds that Hollandsworth is entitled to summary judgment on plaintiff's claim for reckless investigation.

### D.  Exculpatory Evidence

In Brady v. Maryland,373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court held that prosecutors have a duty to disclose evidence that is material to guilt or punishment, and that the suppression of such evidence violates a criminal defendant's right to due process, regardless of whether the prosecutor acted in good faith or in bad faith.  The Eighth Circuit has made it clear that, "Brady's protections also extend to actions of other law enforcement officers such as investigating officers." White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008) (*White I*). "However, an investigating officer's failure to preserve evidence potentially useful to the accused or their failure to disclose such evidence does not constitute a denial of due process in the absence of bad faith."  Id. (emphasis added) (citing Villasana v. Wilhoit, 368 F.3d 976, 980 (8th Cir. 2004)).  Recovery of damages in an action brought under § 1983 requires "proor that a law enforcement officer other than the prosecutor intended to deprive the defendant of a fair trial." Villasana, 368 F.3d at 980.  "Consequently, to be

viable, [plaintiff's] claim must allege bad faith to implicate a clearly established right under Brady." *White I*, 519 F.3d at 814.

In *White I*, the plaintiff was accused by his wife of molesting their daughter. The defendant was a police officer assigned to investigate the allegations. During the course of his investigation, the defendant reviewed the child's diary, which contained potentially exculpatory statements. However, he did not seize the diary as evidence and he did not mention in his report that he had read it. The defendant also failed to disclose to the prosecutor that he had a romantic relationship with the plaintiff's wife that began before charges were filed against plaintiff. Plaintiff's first conviction was set aside and he was acquitted after a third trial. He then filed suit under § 1983. The trial court denied defendant's claim of qualified immunity, and defendant filed an interlocutory appeal.

On appeal, the Eighth Circuit found that the defendant had "deliberately steer[ed] the investigation to benefit his love interest." 519 F.3d at 814. The appellate court also found that the defendant "deliberately withheld from the prosecution the full extent of his relationship with [plaintiff's wife] and failed to preserve the alleged victim's diary which did not corroborate the molestation allegations." Id. The Eighth Circuit agreed with the district court that a genuine issue of material fact existed as to whether the defendant's action met the bad faith standard. On remand, the case proceeded to trial, and plaintiff was awarded damages.

In White v. McKinley, 605 F.3d 525 (8th Cir. 2010) (*White II*), the Eighth Circuit affirmed the judgment, finding that there was "ample evidence" that the defendant did not truthfully disclose potentially exculpatory evidence to the prosecutor. Id. at 533. The court further found that "a reasonable jury could have concluded that [the

defendant's] misrepresentation of his relationship with [plaintiff's wife] to the prosecution and failure to preserve the diary was done in bad faith." Id. at 532. The court went on to explain the plaintiff, in order to prevail on a Brady claim in a § 1983 action, was not required "to show that the jury in his criminal trial would have acquitted him or that he was innocent. " 'The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.' " *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008)(quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)." Id. At 537-38

The potentially exculpatory evidence that plaintiff alleges Hollandsworth failed to disclose to the prosecution was that "Larry Smith [, who raped R.T. also] committed another rape at R.T.'s apartment complex under like circumstances to his rape of R.T." (Doc. #27, at 6, para. 28, at 12, para. 63). However, the undisputed fact is that the other rape plaintiff refers to was committed by Michael Cunningham, who was convicted of the offense. (Doc. #104-1, at 28-29, para. 171; #101, at 11-12).

Additionally, plaintiff asserts that the December 4, 1982 incident involving Larry Smith "banging" on R.T.'s apartment was exculpatory evidence that Hollandsworth should have disclosed to the prosecutor. Plaintiff claims that Hollandsworth withheld this information from the prosecution to "protect[] his interest in a personal relationship with R.T." (Doc. #103, at 42). Unlike the plaintiff in the *White* cases, plaintiff here has presented no evidence that Hollandsworth was involved in a personal relationship with R.T.

Based on the evidence in this case, the Court concludes that there is no genuine issue of material fact as to whether Hollandsworth withheld exculpatory evidence in

bad faith. As such, Hollandsworth is entitled to summary judgment on plaintiff's claim for withholding exculpatory evidence.

Plaintiff also alleges that Deen withheld exculpatory evidence. Because the record establishes that Deen's involvement in the investigation was limited to the live lineup, Deen is entitled to summary judgment on this claim.

### E. Post-Conviction Access to DNA Testing

In Count II of his first amended complaint, plaintiff alleges that Webb violated his constitutional right to post-conviction DNA testing. (Doc. #27, at 1, 10, para. 51, at 13, para. 63).

Briscoe filed a motion for post-conviction DNA testing on October 3, 2001, pursuant to Mo. Rev. Stat. § 547.035, a recently-enacted statute that allowed Missouri prisoners to seek DNA testing of evidence used against them. Webb instructed the crime laboratory and Property Control Unit (PCU) personnel to search for all evidence related to Briscoe's criminal prosecution. In an affidavit dated March 19, 2002, Webb stated that, following a search by his staff, no evidence was found. Webb described the searches that were conducted and identified the individuals who performed them. In November 2005, Webb directed his staff to conduct another search for the evidence. On November 17, 2005, the crime laboratory personnel found three cigarette butts, which led to plaintiff's exoneration.

Because the cigarette butts were later found, plaintiff contends that Webb's affidavit was false. Plaintiff argues that Webb's failure to preserve the cigarette butts thwarted his post-conviction access to DNA testing. (Doc. #27, at 1, 10, para. 51, at 13, para. 63).

In District Attorney's Office for the Third Judicial Distr. v. Osborne, ___ U.S.___, 129 S.Ct. 2308, ___ L.Ed.2d ___ (2009), the Court considered the question of whether

a plaintiff in a § 1983 action had a right under the Due Process Clause to obtain post-conviction access to the state's evidence for the purpose of DNA testing. Id. at 2316. The Court concluded that "in the circumstances of this case, that there is no such substantive due process right." Id. at 2322. Additionally, the Court stated, in dicta, that, "[e]stablishing a freestanding right to access DNA evidence for testing . . . would [require the Court] to decide if there is a constitutional obligation to preserve forensic evidence that might later be tested." Id. at 2323. In light of the holding in Osborne, plaintiff cannot maintain a due process claim against Webb based on the failure to produce evidence for DNA testing.

Additionally, the facts belie plaintiff's claim that Webb submitted a false affidavit. Webb's statements in the affidavit were clearly based on information provided to him by his staff. The affidavit specifically states that the searches for evidence connected to plaintiff's criminal case were performed by crime laboratory and PCU personnel—not by Webb. Plaintiff presents no evidence that the staff reports to Webb were false or that Webb knew that his staff had not conducted the searches as they reported. Further, any constitutional deprivations committed by Webb's staff cannot be imputed to him § 1983.

The Court concludes that Webb is entitled to summary judgment.

### F. Motion for Leave to Amend Complaint

Plaintiff seeks leave to file a third amended complaint "to address the pleading shortcomings" previously found by the Court. In a Memorandum and Order dated February 22, 2010, the Court dismissed St. Louis County as a defendant because Briscoe failed to assert "facts [that] gave rise that the County implemented a policy that violated [his] constitutional rights." (Doc. #109, at 5-6). The Court also denied Webb's motion for summary judgment based on the statute of limitations, because

there was insufficient information in the record to determine when the limitations period began to run.  Plaintiff states that the proposed third amended complaint will "provide further factual bases for the [§ 1983] claim against [the] County and allegations with respect to the statute of limitations rule regarding the claim against . . . Webb."  (Doc. #120, at 1).

Federal Rule of Civil Procedure 5(a) provides that the court "should freely give leave [to amend pleadings] when justice so requires."  Fed.R.Civ.P. 5(a)(2).  However, the court may properly deny a motion to amend a complaint if such amendment would be futile.  Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) (citing Kozohorsky v. Harmon, 332 F.3d 1141, 1144 (8th Cir. 2003).  "When a court denies a motion to amend a complaint 'on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand' a motion to dismiss pursuant to Rule 12, Fed.R.Civ.P."  Bakhtiari v. Beyer, No. 4:06-CV-01489, 2008 WL 3200820, *1 (E.D. Mo. Aug. 6, 2008) (citing *In re* Senior Cottages of Am., LLC, 482 F.3d 997, 1001 (8th Cir. 2007)).

As discussed above, a municipality can be held liable under § 1983 only when an official policy, practice, or custom causes a violation of a plaintiff's constitutional rights.  Avalos, 420 F.3d 841, 846.  "To establish a constitutional violation resulting from such a custom, a plaintiff must show that his alleged injury was caused by [county] employees engaged in a widespread and persistent pattern of unconstitutional misconduct that municipal policymakers were either deliberately indifferent to or tacitly authorized."  Russell, 420 F.3d 841, 849 (*citing* Larson v. Miller, 76 F.3d 1446, 1453 (8th Cir. 1996)).  However, "[b]efore the [county] can be held liable, there must be an unconstitutional act by a [county] employee."  Id.

In the proposed third amended complaint, plaintiff asserts new allegations

regarding St. Louis County's policies, practices, and customs that allegedly caused the violation of his constitutional rights. The Court has already determined that the County's employees— Hollandsworth, Deen, and Webb—are entitled to judgment as a matter of law on plaintiff's constitutional claims. Thus, the proposed amended complaint would be futile, as it would not be able to withstand a motion by St. Louis County to dismiss for failure to state a claim. Likewise, new allegations that would address the statute of limitations issue as it pertains to Webb have been made irrelevant by the Court's ruling that plaintiff has no cognizable claim against Webb under § 1983.

Accordingly,

**IT IS HEREBY ORDERED** that the motions for summary judgment of defendants Lane Hollandsworth, Stephen Deen, Sr., and Jack Webb [Doc. Nos. 89, 90, 91] are **granted**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file a third amended complaint [Doc. #120] is **denied**.


CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2010.